IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ANGEL STEAD | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No. 10 C 4526 |
|  | ) |
| SERGEANT THOMAS SKINNER and<br>CAPTAIN ANDERSON, | ) Judge Virginia M. Kendall<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

For the last few days of 2008 and first few days of 2009, plaintiff Angel Stead was a pre-trial detainee at Cermak Hospital, the medical wing of the Cook County Jail. She sued Sergeant Thomas Skinner and Captain Martha Anderson (together, "Defendants"), two correctional officers working at Cermak Hospital while Stead was held there, for providing her unconstitutional conditions of confinement. While detained at the jail, Stead was housed in a "self-contained" cell with a shower and a phone, not in the general population. According to Stead, Defendants violated her substantive due process rights in three ways: (1) for the first five days of her detention, she was menstruating but she could not wash herself because the shower and sink in her cell had no running water; (2) she did not receive enough maxi pads; and (3) she had insufficient access to a phone because the phone in her cell was broken as well.[1] For the below reasons, the Court grants Defendants' motion for summary judgment in its entirety (Doc. 32) because the conditions that Stead complains of were not sufficiently serious to violate Stead's constitutional rights.

---

[1] Stead dropped her allegation that Defendants were involved in posting "wanted" posters with her picture at the Cook County Jail. (*See* Doc. 42 at 15.)

I.  **MATERIAL UNDISPUTED FACTS**

Stead was a pre-trial detainee at the Cook County Jail from December 27, 2008 through January 5, 2009. (Pl. 56.1 Resp. ¶ 1.) When she arrived at the jail, officials put her in Cermak Hospital, rather than the general population, for her protection because she was a former Cook County correctional officer. (*Id.* ¶¶ 4-5.) Sergeant Skinner and Captain Anderson were Cook County employees who worked at Cermak Hospital at various times while Stead was detained there. (*Id.* ¶¶ 2-3, 13-14; Def. 56.1 Resp. ¶ 68.) Though the parties dispute whether Stead told Defendants that her sink, shower and telephone were broken, or that she needed more maxi pads, the parties agree that Stead only spoke to Sergeant Skinner and Captain Anderson briefly one time each. (Pl. 56.1 Resp. ¶¶ 36, 40-41; Stead Dep. at 145.) Plaintiff suffered no physical injuries as a result of her detention. (Pl. 56.1 Resp. ¶ 64.)

The cells on the tier where Stead was detained are "self-contained," meaning that each cell has its own bed, sink, toilet, shower, telephone and television that may be used by the detainee without restriction. (*Id.* ¶ 7.) These cells have more amenities than the general population area. (Pl. 56.1 Resp. ¶ 11, citing Stead Dep. at 49-50.) Though the parties dispute whether the shower, sink and telephone worked in Stead's cell, they agree that the toilet worked and that she had toilet paper, and that the other available cells on the tier had working showers and phones. (Pl. 56.1 Resp. ¶ 19; Def. 56.1 Resp. ¶ 57.) Stead also had access to a working sink and toilet during trips to court on December 29, 2008, December 30, 2008, December 31, 2008 and January 5, 2009. (Pl. 56.1 Resp. ¶¶ 25-27.)[2] The detainee request slips that Stead filled out while detained did not mention the issues with her sink and shower, only that she wanted a phone call. (*Id.* ¶ 55.) She did not submit any grievance forms. (*Id.* ¶¶ 52-53.)

---

[2] Stead does not claim that she had insufficient drinking water.

When she arrived at Cermak Hospital, Stead received a clean uniform and a maxi pad because she had started menstruating the day before. (*Id.* ¶ 16; Def. 56.1 Resp. ¶ 69.) The jail's policy with respect to maxi pads is to only give them out upon request because inmates use them as weapons[3], as well as to jam locks and to block air flow under doors, among other problematic uses. (Pl. 56.1 Resp. ¶¶ 17-18; Def. 56.1 Resp ¶ 71.) While at the Maywood courthouse on the second day of her detention, she bled through her jail uniform pants. (Def. 56.1 Resp. ¶ 75.) A few days after she arrived at the jail, Stead received another maxi pad. (Pl. 56.1 Resp. ¶ 22; Def. 56.1 Resp. ¶ 79.) On January 2, 2009, an employee of the Department of Women's Justice ("DWJ"), a treatment facility within the Cook County Jail, summoned Stead to the DWJ. (*Id.* ¶ 44.) There, Stead was able to take a shower and received various toiletries, as well as a new uniform, underwear, socks, shoes and two maxi pads, though by then her period was almost over. (*Id.* ¶ 50.) Stead's tier at Cermak Hospital had a nurse available to her at all times, but Stead never requested to see a nurse while she was detained. (*Id.* ¶¶ 23-24.)

As for the telephone in Stead's cell, the parties dispute whether Stead told Defendants that it was broken, and whether Stead requested to use a phone for the tier nurse not normally accessible to detainees because it has an unrestricted outside line.[4] They agree, however, that Stead was able to make several phone calls using free outside lines (not collect calls) while at DWJ on January 2, 2009. (*Id*. ¶ 49; Def. 56.1 Resp. ¶ 83.)

**II.      STANDARD**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials

---

[3]This is an undisputed fact although it is not explained how a maxi pad can be used as a weapon.

[4]Though detainees may use the phones in the self-contained cells without restriction, those phones only allow collect calls. (Anderson Dep. at 24-25.)

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## III.     DISCUSSION

### A.     Constitutional Standards for Conditions of Confinement for Pre-Trial Detainees

Stead asserts that the conditions of her confinement at Cermak Hospital violated her substantive due process rights. State pre-trial detainees like Stead are protected by the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979); *Tesch v. Cty. of Green Lake*, 157 F.3d 465, 472-73 (7th Cir. 1998). The Due Process clause prohibits the state from punishing a pre-trial detainee and requires jail officials to "provide humane conditions of confinement" for detainees. *Henderson v. Sheahan*, 196 F.3d 839, 844-45 (7th Cir. 1999). That

obligation includes providing adequate food, clothing, shelter, protection and medical care. *Id.*

"To demonstrate a constitutional violation for the conditions of [her] confinement," a pre-trial detainee "must prove both the objective component of [her] substantive due process (Did the conditions amount to punishment?) and the subjective or state of mind component (Did the officials act with a sufficiently culpable state of mind?)." *Tesch*, 157 F.3d at 473.[5] The subjective component requires the detainee to show that the jail official "knew of a substantial risk of serious injury to the detainee but nevertheless failed to take reasonable measures to prevent that harm from occurring." *Id.*; *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th. 1995) ("A prison official violates the constitutional rights of a pretrial detainee only when he acts with deliberate indifference. Conduct is deliberately indifferent when the defendant acts in an intentional or criminally reckless matter."); *Tesch*, 157 F.3d at 475-76 (finding that this "deliberate indifference" test applied in Eighth Amendment cases brought by convicted prisoners also applies to a pre-trial detainee's allegations that the defendants failed to attend to her medical needs.)

To satisfy the objective component, "the deprivation alleged must be objectively, 'sufficiently serious.'" *Henderson*, 196 F.3d at 845 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To be sufficiently serious, the jail official's "act or omission must result in the denial of the minimal civilized measure of life's necessities . . . extreme deprivations are required to make out a conditions-of-confinement claim." *Henderson*, 196 F.3d at 845 (internal citations omitted); *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) ("[a]n objectively sufficiently serious risk . . . is one that society considers so grave that to expose *any* unwilling individual to it would offend contemporary

---

[5]Whether a conditions of confinement claim is brought by a prisoner (analyzed under the Eighth Amendment) or by a detainee (analyzed by the Fourteenth Amendment), a plaintiff must establish both prongs of the test. *See Henderson*, 196 F.3d at 845 n. 2.

standards of decency.") (emphasis in original); *Tesch*, 157 F.3d at 476 (analyzing whether the impositions were "sufficiently severe to amount to a form of punishment . . . there is, of course, a de minimis level of imposition with which the Constitution is not concerned.")

Here, the parties dispute whether Defendants knew that the shower and phone in Stead's cell did not work and that she needed additional maxi pads. Stead asserts that she complained to Defendants—among other correctional officers and jail officials—about the conditions in her cell; Defendants claim that she never said anything to them about it. This factual dispute does not preclude summary judgment because, as discussed below, the conditions of Stead's confinement, viewing the evidence in Stead's favor, were not objectively sufficiently serious, and consequently, Stead cannot meet the second prong of the constitutional test.

### B. Objectively Sufficiently Serious

While Stead's conditions of confinement were less comfortable than she would have liked, they do not rise to the level of violations of her substantive due process rights. *See Tesch*, 157 F.2d at 476 (finding the plaintiff "was not denied any of his basic necessities; he just did not receive the level of comfort that he demanded . . . it is not unreasonable for a pretrial detainee to expect to experience a short-term imposition on a basic necessity."). When determining whether an imposition is de minimis or a violation of the detainee's constitutional rights, "it is appropriate to evaluate both its severity and its duration." *Id.* at 476 (citing *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)).

First, Stead was unable to take a shower for about five days, between December 28, 2008, when she arrived at Cermak Hospital, and January 2, 2009, when she went to DWJ. Binding precedent holds that one shower a week does not violate a detainee's substantive due process rights. *See Davenport v. De Robertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). While Stead did not have access

6

to a full shower, she had access to a working toilet (both in her cell and while at the courthouse) and a working sink (while at the courthouse). As for the hygiene products, Stead received a maxi pad at the start of her detention, another a few days later, and a couple more near the end of her menstrual cycle. She had full access to toilet paper at all times. While she may have preferred to have more maxi pads to avoid the embarrassment of bleeding through her uniform pants, there is no evidence that her health was ever in danger. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1998) (failure to provide the plaintiff with toilet paper for five days, or with soap, toothbrush, and toothpaste for 10 days was not a violation of his constitutional rights because the plaintiff suffered no physical harm and the conditions were temporary); *see also Myers v. Leflore County Det. Ctr. Pub. Trust*, No. 07-223, 2009 WL 87599, at *5 (E.D. Okla. Jan. 12, 2009) (receiving insufficient maxi pads, while embarrassing to the plaintiff, did not rise to the level of a constitutional violation); *Benjamin v. Fraser*, 161 F. Supp. 2d 151, 177 (S.D.N.Y. 2001) (two days without feminine hygiene products and toilet paper did not establish a constitutional violation).

Finally, Stead could not make any phone calls between the evening of December 28, 2008 and January 2, 2009, when DWJ officials permitted her to make calls using an outside line, rather than the collect call-only phones that general population detainees must use. She was not held incommunicado; she had regular access to her lawyer during a handful of court appearances during her detention that could have made phone calls to her family on her behalf. In essence, Stead's claim is that she was unable to call who she wanted when she wanted. While the delay in having unfettered access to a phone was an imposition, this is also not the sort of "extreme deprivation" that constitutes a violation of her due process rights. *See Henderson*, 196 F.3d at 845; *see also Philmlee v. Byrd*, No. 10 C 221, 2010 WL 6549829 at *2 (E.D. Ark. Oct. 21, 2010) (delay in detainee's access

7

to a phone was not unreasonable). Stead points to *Tucker v. Randall*, 948 F.2d 388, 391 (7th Cir. 1991), which noted "[d]enying a pre-trial detainee access to a telephone for four days would violate the Constitution in certain circumstances." *Tucker* is distinguishable, however. *Tucker* mentioned the four day delay in the context of a detainee's right to contact her counsel under the Sixth Amendment, and held "unreasonable restrictions" on telephone access "may" violate the Fourteenth Amendment.[6] *Id.* Again, there is no claim or evidence that Stead had insufficient access to her counsel, and as noted above, the four-day delay was not objectively unreasonable.

## IV. CONCLUSION

For the above reasons, Defendants' motion for summary judgment (Doc. 32) is granted and the Court enters final judgment for Defendants.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 2, 2011

---

[6] On remand, the district court granted summary judgment to the jail officials on qualified immunity grounds. *See Tucker v. Randall*, 840 F. Supp. 1237, 1246 (N.D. Ill. 1993).